UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **CHERYL ROBERSON** | * | **CIVIL ACTION NO. 12-0907** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **CAROLYN COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Cheryl Roberson protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on October 27 and November 2, 2009, respectively. (Tr. 16, 120- 121, 127-129). She alleged disability as of January 5, 2009, because of diabetes, depression, and high blood pressure. (Tr. 136, 157). The claims were denied at the initial stage of the administrative process. (Tr. 65-75). Thereafter, Roberson requested and received an April 1, 2010, hearing before an Administrative Law Judge ("ALJ"). (Tr. 33-64). However, in a November 8, 2010, written decision, the ALJ determined that Roberson was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national

economy. (Tr. 13-29). Roberson appealed the adverse decision to the Appeals Council. On February 17, 2012, however, the Appeals Council denied Roberson's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On April 17, 2012, Roberson sought review before this court. She alleges that the ALJ did not comply with the Commissioner's procedure(s) before purporting to deny benefits on the grounds that Plaintiff failed to follow prescribed treatment.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.
*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**I.** **The ALJ's Decision**

    **a)** **Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Roberson had not engaged in substantial gainful activity during the relevant period. (Tr. 18). At step two, he found that she suffers severe impairments of diabetes mellitus, hypertension, and depression/anxiety. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 18-20).

    **b)** **Residual Functional Capacity**

The ALJ next determined that Roberson retains the residual functional capacity ("RFC") to perform light work, reduced by the inability to climb ladders/ropes/scaffolds, work at unprotected heights or around dangerous equipment, and the ability to no more than frequently

climb, balance, kneel, crouch, stoop, reach, hand, finger, and feel bilaterally. (Tr. 20).[1] In addition, Roberson is moderately limited in her ability work with the public, and to work at a production rate pace. *Id*. In so deciding, the ALJ remarked that although the claimant suffers from diabetes mellitus, "with medical compliance, her symptoms can be under adequate control." (Tr. 26).

    c)    **Steps Four and Five**

The ALJ concluded at step four of the sequential evaluation process that Roberson could not perform her past relevant work. (Tr. 28). Accordingly, he proceeded to step five. At this step, the ALJ determined that Plaintiff was a younger individual, with a limited education, and that transferability of skills was immaterial. *Id*. He observed that given Roberson's vocational factors, and if she were capable of the full range of light work, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 202.17, Table 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 28). However, because Roberson's RFC did not permit her to perform the full range of light work, the ALJ consulted a vocational expert to determine the extent that her additional limitations eroded the occupational base for

---

[1] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

unskilled light work. *Id*. In response, the vocational expert identified representative jobs consistent with the ALJ's RFC.[2]

## II.     **Argument on Appeal**

Plaintiff does not directly challenge the ALJ's RFC. Rather, her sole argument on appeal is that the ALJ failed to comply with the requirements of Social Security Ruling 82-59 before determining, in effect, that she failed to follow prescribed treatment. Specifically, she faults the ALJ's decision because he did not make a determination that she *refused* to follow treatment, without justification. *See Titles II and XVI: Failure to Follow Prescribed Treatment*, SSR 82-59.

Social security rulings are not binding on the federal courts; however, they are "binding on all components of the Social Security Administration." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35 (b)(1). Furthermore, where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required. *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). If an agency violates its own rules, *with resulting prejudice*, then the underlying proceedings are tainted, and any resulting actions cannot stand. *Id*.

Applying the foregoing principles to the facts at hand, the court is not persuaded that the ALJ transgressed any material requirements of Social Security Ruling 82-59. Initially, and as pointed out by the Commissioner, Social Security Ruling 82-59 presupposes an otherwise disabling impairment that would be ameliorated had the claimant not refused to undergo

---

[2] Two representative jobs identified by the vocational expert at the light exertional level were hotel housekeeper, DOT # 323.687-014 and price marker, DOT # 209.587-034. (Tr. 28-29, 62-63). For the housekeeper position, there are 244,981 full-time housekeeper jobs nationally, and 3,814 in Louisiana; for the price marker job, there are 461,128 positions nationally and 5,359 positions in Louisiana. *Id*. These jobs constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

treatment prescribed by her physician.  Here, there was no such antecedent finding by the ALJ. *See C.M.F. v. U.S. Com'r of Soc. Sec. Admin.*, Civ. A. No. 08-1942, 2009 WL 5175187 (W.D. La. Dec. 18, 2009) (SSR 82-59 not implicated because no finding that plaintiff had a disabling seizure disorder that could be rendered non-disabling by taking medication).

Rather, it is apparent that the ALJ relied on Plaintiff's history of poor compliance with her diabetes medication to discount her credibility regarding the limiting effects of her impairment.  Indeed, Social Security Ruling 96-7p provides that

> the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, *or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure*. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A July 2, 1996) (emphasis added).

Furthermore, a claimant will not be found disabled if she fails, without good reason, to follow prescribed treatment.  20 C.F.R. §§ 404.1530, 416.930.

In this case, the ALJ stated that

> [i]n terms of the claimant's alleged disability due to diabetes mellitus, the record establishes a history of poorly controlled diabetes mellitus; however, non-compliance with medications has been a most consistent issue discussed in Dr. Bowman's records.  She has admitted to not refilling prescriptions timely and has a tendency to stop taking her medications without consulting with her physician.  She claimed compliance, but later admitted she was not comfortable giving herself injections.  Once she was given more training on how to give herself injections her blood sugar level on the following visit was much improved at 116.  The claimant has required a number of medication changes although Dr. Bowman doubted she had been compliant with medications.  Her response to insulin in the clinic suggests she can achieve better control of her diabetes mellitus with compliance.  When the claimant's blood sugar levels are improved she reported

> improvement in her symptoms.  On one occasion, she reported no further hand or leg cramps once Lantus was resumed.  Overall, the claimant has diabetes mellitus, but with medical compliance, her symptoms can be under adequate control.

(Tr. 26).

In other words, the ALJ considered, but ultimately rejected Plaintiff's proffered rationales for her failure to adhere to her prescribed diabetes regimen.  Although the record contains evidence that Plaintiff experienced difficulty understanding information and following directions regarding her medication, there also is substantial evidence to support the ALJ's implicit, if not explicit, determination that Plaintiff's poor medication compliance was volitional, *i.e.*, that she "refused" to follow her prescribed regimen, without justification.[3]

---

[3]  A March 9, 2009, Progress Note indicates that Roberson did not check her blood sugar over the weekend because she "broke the (stabber)."  (Tr. 305).  The physician questioned whether this was "self sabotage."  *Id*.

On May 15, 2009, Roberson told her treating physician, Dr. Bowman, that she was compliant with her medication, but later admitted that she had been out of Metformin for at least one week.  *See* Tr. 299.  Bowman queried whether she was medically compliant.  *Id*.

On August 7, 2009, Dr. Bowman, wrote that Roberson was medically non-compliant; she also admitted that she was dependent on someone else to administer her insulin injections.  (Tr. 293).  Bowman did not believe that Roberson was taking the insulin as directed because her blood sugar level did not change whether she admitted to taking the insulin or not.  *Id*.  During the same office visit, staff members practiced self-injection with Roberson until she felt comfortable with the technique.  *Id*.

On August 17, 2009, Roberson told Bowman that she was doing better taking her insulin, but still was not injecting herself.  (Tr. 292).

On February 26, 2010, Bowman noted that Roberson's diabetes appeared to be worsening.  (Tr. 280).  Bowman remarked, however, that Roberson demonstrated good response to the insulin while in the clinic, even though she professed to be in medical compliance at home.  (Tr. 280).

In addition, Dr. Bowman's Progress Notes all but uniformly reflect that Roberson did not suffer from learning or educational barriers, and that she understood written and verbal instructions.  *See e.g.*, Tr. 280-293.

Citing a November 3, 2009, emergency room visit, Plaintiff further argues that her failure to follow her prescribed medication stemmed from a lack of financial resources.  *See* Tr. 239.  At that visit, however, she was advised of the $4 plan, referred to case management for humalog prescription, and, in the meantime, provided with a three month supply.  *Id*.

The court further observes that on December 15, 2009, at the request of the state agency, Roberson underwent a consultative examination administered by Jason Hatfield, M.D. (Tr. 259-262). Despite Plaintiff's complaints of diabetes (*that she admitted was not controlled at the time*), depression, high blood pressure, and seizures, Dr. Hatfield opined essentially that Roberson suffered no functional limitations at all. *Id*.[4] Consistent with Dr. Hatfield's findings, and as documented by the ALJ, no treating physician imposed any work-related functional restrictions as a result of the claimant's impairments. (Tr. 26). Although the ALJ ultimately ended up assigning some limitations of functioning, he did so based upon Plaintiff's subjective complaints, and employed Dr. Hatfield's benign examination findings to support an RFC for a reduced range of light work. (Tr. 27).

In sum, the undersigned finds that, by its terms, Social Security Ruling 82-59 is inapplicable because the ALJ did not determine that Plaintiff would be disabled absent her failure to follow her prescribed treatment. Second, even if Social Security Ruling 82-59 were to apply, the ALJ determined, in effect, that Plaintiff failed or refused to comply with prescribed treatment, without reasonable justification – a determination that is supported by substantial evidence. Finally, even if Plaintiff's diabetes remained uncontrolled through no fault of her own, Dr. Hatfield's physical examination confirms that the impairment did not cause more than mild limitations of functioning. Thus, to the extent that the ALJ failed to comply with any of the provisions of Social Security 82-59, any error was harmless. *See Mays v. Bowen*, 837 F.2d

---

[4] Hatfield diagnosed diabetes mellitus, hypertension, and depression. *Id*. Nevertheless, he opined that Roberson should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and to carry out and remember instructions. *Id*.

1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

## Conclusion

The ALJ in this case was tasked with determining whether Plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform and could have supported a different outcome. However, the Commissioner ultimately grounded his decision upon the opinion of the consultative physician, and Plaintiff's partially credited complaints. Such conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Roberson was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Shreveport, Louisiana, this 18th day of June 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE